COURT OF APPEALS OF VIRGINIA

Present:  Judges Fulton, Ortiz and Raphael
Argued at Norfolk, Virginia

YO, F/K/A
 MARIO BALLARD

MEMORANDUM OPINION[*] BY
v.        Record No. 0035-22-1          JUDGE JUNIUS P. FULTON, III
AUGUST 9, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Tyneka L.D. Flythe, Judge

Charles E. Haden for appellant.

Amanda L. Lavin, Assistant Attorney General (Jason S. Miyares,
Attorney General; Maria N. Wittmann, Deputy Attorney General;
Susan Barr, Senior Assistant Attorney General, on brief), for
appellee.

This appeal involves a sexually violent predator annual review, pursuant to Code

§ 37.2-910, for Yo, formerly known as Mario Ballard.  In 2007, following a bench trial in the

Circuit Court of the City of Newport News, Yo was declared a sexually violent predator[1] and was

civilly committed to the custody of the Department of Mental Health, Mental Retardation and

Substance Abuse Services (the Department).[2]  Shortly after his commitment to the Department, Yo

was convicted of malicious wounding for assaulting another resident at the Virginia Center for

Behavioral Rehabilitation (VCBR).  The assault caused the other resident, a deaf man, to suffer

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The predicate offense was a 1994 rape conviction.  Yo, while under the influence of
alcohol, raped his best friend's wife.

[2] The Department is now known as the Virginia Department of Behavioral Health and
Developmental Services.

several facial bruises and lacerations requiring nine sutures and resulted in Yo's sentence of ten years in prison. After completing his prison sentence, Yo returned to VCBR in 2018. Yo's 2021 annual review hearing concluded on December 2, 2021, with the court's determination that Yo "does still remain a sexually violent predator" and "is not suitable for conditional release."

Yo appealed, assigning error to the trial court's finding that he remained a sexually violent predator[3] even though, for the last twenty-four months, he has actively participated in the treatment programs at VCBR, avoided any physical altercations, refrained from using any drugs or alcohol, and has not incurred a conviction for a sexually violent offense since 1994. Because the record in this case supports the trial court's conclusion that the Commonwealth proved, by clear and convincing evidence, that Yo remains a sexually violent predator in need of inpatient treatment, we affirm.

## BACKGROUND

A person is considered a sexually violent predator if "he ha[s] been convicted of a sexually violent offense and . . . because of a mental abnormality or personality disorder, he finds it difficult to control his predatory behavior which makes him likely to engage in sexually violent acts." *Commonwealth v. Squire*, 278 Va. 746, 749 (2009) (citing Code §§ 37.2-900 and -908). That determination must "be based on the totality of the record, including but not limited to expert testimony." *Demille v. Commonwealth*, 283 Va. 316, 318 (2012). During a sexually violent predator annual (or biennial) review, the Commonwealth has the burden of proving, by clear and convincing evidence, "that the respondent remains a sexually violent predator." Code § 37.2-910. If the Commonwealth satisfies this burden and the court finds that the respondent remains a sexually

---

[3] Although Yo was also denied conditional release following his 2021 annual review, he neither sought conditional release from the trial court nor seeks review of that denial from this Court. The sole issue on appeal is whether the trial court erred in finding that Yo remains a sexually violent predator.

violent predator, the court "shall order that he remain in the custody of the Commissioner for secure inpatient hospitalization and treatment or that he be conditionally released." *Id.* If the respondent is no longer a sexually violent predator, he shall be released "from secure inpatient treatment." *Id.*

Code § 37.2-910(B) requires that, before a review hearing, a report must be completed and filed with the court "reevaluating the respondent's condition and recommending treatment. The report shall be prepared by a licensed psychiatrist or a licensed clinical psychologist skilled in the diagnosis and risk assessment of sex offenders and knowledgeable about the treatment of sex offenders."

Dr. Mario J.P. Dennis, a forensic psychologist with VCBR Forensic Services, completed Yo's 2021 annual review evaluation, the report for which was entered into evidence. Dr. Dennis also testified at the review hearing, opining that, as a consequence of Yo's antisocial personality disorder, Yo continued to meet the criteria of a sexually violent predator and was not a suitable candidate for conditional release. Dr. Dennis diagnosed Yo with five different conditions: (1) Other Specified Paraphilic Disorder, Non-Consent; (2) Antisocial Personality Disorder; (3) Alcohol Use Disorder, Moderate, in a controlled environment; (4) Cannabis Use Disorder, Moderate, in a controlled environment; and (5) Stimulant Use Disorder, (Cocaine) Moderate, in a controlled environment. Of particular concern to Dr. Dennis were the dual diagnoses of paraphilic disorder and antisocial personality disorder: the "interplay or interaction between those two disorders and the personality characteristics that are involved" place him at a "higher risk for reoffense than either of those disorders alone."

At Yo's request and pursuant to Code § 37.2-910(B), a second opinion evaluation of Yo was performed by Dr. Alan T.M. von Kleiss, a board certified clinical psychologist. Dr. von Kleiss diagnosed Yo with: (1) Antisocial Personality Disorder, with noted narcissistic elements; (2) Alcohol Use Disorder: Severe, in a secure environment; (3) Cannabis Use Disorder:

Moderate-severe, in a secure environment; and (4) Stimulant Use Disorder (Cocaine): Moderate, in a secure environment.

Dr. Dennis acknowledged Yo's relatively good behavior at VCBR for the twenty-four months preceding his review, but remarked that, "first of all, most of the residents at VCBR are of good behavior." However,

> VCBR is not . . . an institution that relies on the concept of probation or parole, where good behavior gets you out the door. It is a treatment facility. And so it's an individual's response to treatment and their progress in treatment that would determine whether . . . they are considered eligible or appropriate or suitable for conditional release.

Elaborating on Yo's response to treatment, Dr. Dennis noted that "Yo has taken a relatively antagonistic approach to treatment, particularly more recently." Specifically, Yo challenges the "clinical acumen of the treatment team," disputes his diagnoses, and disagrees "with the feedback he's been given in treatment." Yo "has struggled to form a collaborative working relationship with his treatment team," which Dr. Dennis believes is "based on some of the attitudes that are embedded in the antisocial personality disorder."

Yo's substance use disorders also pose a concern. Alcohol played a role in both of Yo's known prior sexual offenses[4] and served as the basis for his probation violation. Although Yo is not currently using drugs or alcohol, he is in "a controlled environment where the access to drugs and alcohol are relatively limited." Moreover, Dr. Dennis's annual review evaluation reveals a history of drug-seeking behavior while at VCBR. Psychiatric notes from 2018, 2019, and 2020 show that Yo has consistently sought to be prescribed benzodiazepines, even though he has consistently been told he does "not endorse any signs of PTSD except for some nonspecific symptoms of anxiety."

---

[4] In addition to the 1994 rape, in 1984 at the age of fourteen Yo was convicted of sexual battery, assault and battery, and two counts of criminal mischief for assaulting and fondling two girls, eleven and thirteen years old. He was intoxicated at the time of those offenses.

Yo disputed this assessment. As of 2020, Yo was "still requesting to be on [b]enzodiazepines for his anxiety and agitation, but he does not accept any other alternative." Dr. von Kleiss similarly noted that Yo "continues to seek out mood altering substances and specifically seek[s] out benzodiazepines with a known profile similar to the effects of alcohol." In his interview with Dr. von Kleiss, Yo also demonstrated an overly casual attitude toward alcohol, stating that he "would like to have a glass of wine or two with [his] meals" upon release. Dr. von Kleiss found Yo's "desire to return to consuming alcohol[,] in addition to his targeted attempts to attain benzodiazepines, suggests substantial risk he will return to alcohol use once released to the community." This desire to consume alcohol demonstrates that Yo "has little understanding of the substantial risk such behavior would pose to himself and the community" and is "deeply disturbing given his history."

In addition to the above concerns, both reports recognized several positive responses Yo has had to his treatment. Yo has met his objective for identifying internal and external high-risk factors, he has actively attended and engaged in his treatment groups, and he has made several statements to other group members demonstrating his willingness and ability to "identify[ ] and replac[e] thinking errors."

Dr. Dennis concluded his evaluation of Yo noting that he "has made progress since his last annual review report and hearing," but Yo still demonstrates some concerning thought processes and behaviors. Yo has minimized his offense and "attribute[ed] some of the responsibility for the offense to the victim." Further, "Yo overlooks the role of anger in his offenses and elsewhere in his life as a risk factor." Dr. Dennis "strongly recommends [ ]Yo complete the entire seven Relapse Prevention groups before returning to the community." At the time of the evaluation and review hearing, Yo was in Phase II of VCBR's three-phase program. Although completion of all three phases is not a requirement for conditional release or shedding the sexually violent predator label,

completion of Phase III would ensure Yo receives additional sex offender treatment, including addressing his "risk factors, treatment-based coping/relapse prevention skills, and his underlying anger issues, which could be re-energized if he encounters problems in the community." Phase III would also provide Yo with additional tools to mediate his significant vulnerability to drugs and alcohol.

Like Dr. Dennis, Dr. von Kleiss agreed that although Yo's behavior has improved throughout his time at VCBR, he remains a sexually violent predator in need of intensive inpatient treatment. Yo's release to the community, Dr. von Kleiss opined, "likely *would put* the general population at undue risk and *is not recommended* at this time."

STANDARD OF REVIEW

In considering whether the evidence was sufficient for the trial court's judgment, "we review the evidence and all reasonable inferences from the evidence in the light most favorable to . . . the prevailing party below," in this case, the Commonwealth, "and will not reverse the judgment of the trial court unless it is plainly wrong or without evidence to support it." *Commonwealth v. Squire*, 278 Va. 746, 749 (2009) (citing *Higginbotham v. Commonwealth*, 216 Va. 349, 352 (1975)).

ANALYSIS

Code § 37.2-900 provides three criteria which must be satisfied to conclude that an offender is a sexually violent predator. First, he must have "been convicted of a sexually violent offense." Code § 37.2-900. Second, he must possess "a mental abnormality or personality disorder." *Id.* Third, because of this "mental abnormality or personality disorder," the offender "finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." *Id.* Yo was convicted of rape, a sexually violent offense. He does not dispute that the first criterion is satisfied. Yo does dispute the diagnoses of his mental abnormalities or personality disorders, as

well as the conclusion that they cause him difficulty controlling his predatory behavior, making him likely to engage in sexually violent acts.

The evidence in the record overwhelmingly supports the trial court's conclusion that Yo suffers one or more diagnosable mental abnormalities or personality disorders. Remarkably, both Dr. Dennis and Dr. von Kleiss diagnosed Yo with antisocial personality disorder based on the criteria listed in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5). Dr. Dennis concluded that Yo satisfied six of the seven criteria for antisocial personality disorder, and Dr. von Kleiss opined that Yo satisfied all seven of the criteria. Both doctors supported the diagnoses with specific evidence of Yo's behavior. They agreed Yo satisfied the following criteria: (1) "Failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest," which was evidenced by Yo's lengthy and serious criminal record; (2) "Impulsivity or failure to plan ahead," which was supported by the nature of Yo's crimes; (3) "Irritability and aggressiveness, as indicated by repeated physical fights or assaults," which was evidenced by Yo's multiple convictions for assaultive behavior; (4) "Reckless disregard for safety of self or others," which was evidenced by Yo's multiple prior violent and sexual charges; (5) "Consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations," which was evidenced by Yo's "unstable employment history" and "failure to pay court costs;" (6) Lack of remorse, as indicated by being indifferent to or rationalizing having hurt, mistreated, or stolen from another, which was evidenced by Yo's lack of remorse for the victims of his crimes, as well as his blaming others for his crimes. Additionally, Dr. von Kleiss found that Yo met the additional criterion of "Deceitfulness, as indicated by repeated lying, use of aliases, or conning others for personal profit or pleasure," which was evidenced by his "lying about the crimes he has committed"

and "lying in prison regarding rule violations." It is clear that the diagnosis of antisocial personality disorder, and the trial court's acceptance of that diagnosis, is supported by the record.[5]

The record likewise supports Yo's diagnosis of the various substance abuse disorders. Yo was under the influence of intoxicants during the commission of the underlying rape, as well as during other pivotal moments in his history, including a sexual assault he committed as a juvenile. Alcohol use was also the basis for the probation violation that caused Yo's suspended sentence to be revoked. Based on Yo's drug-seeking behavior at VCBR and his comments to Dr. von Kleiss about intended alcohol consumption upon his release, the record supports the conclusion that these disorders remain in effect.

Finally, the record supports the trial court's finding that, "because of [these] mental abnormalit[ies] or personality disorder[s], [Yo] finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." Code § 37.2-900. In considering Yo's antisocial personality disorder, Dr. Dennis opined that it impacts Yo's "emotional and/or volitional capacity, and by causing him difficulty controlling his predatory behavior, predisposes him to engage in sexually violent acts." Further, both doctors opined that Yo's substance use disorders negatively interact with his personality disorders "in such a way as to increase the likelihood of a sexually violent offense or other antisocial behavior." As such, Yo's apparent lack of understanding about the seriousness of his substance use disorders, the risk substances pose upon his release, and the role substance use has played in his past behavior are both concerning and supportive of the trial court's conclusion that Yo's "mental abnormalit[ies] or personality disorder[s]" make it "difficult

---

[5] Dr. Dennis also diagnosed Yo with Other Specified Paraphilic Disorder, Non-Consent. Dr. von Kleiss did not make such a diagnosis. Nevertheless, the record contains evidence in support of a conclusion that Yo was properly diagnosed with this mental abnormality or personality disorder as well.

[for Yo] to control his predatory behavior, which makes him likely to engage in sexually violent acts."[6]

Although Yo's behavior has certainly improved during his stay at VCBR, the record amply demonstrates that there are additional concerns that remain unaddressed, including the role of anger in his offensive behavior; his "thinking errors," including victim blaming, which stand in the way of his acceptance of full responsibility for his actions; and the role of drugs and alcohol in his life. Phase III of the VCBR treatment program is designed to help offenders address some of these issues, and the record supports the conclusion that progress through the remainder of the VCBR program may mitigate the risk Yo poses to the general public upon his eventual release. As Dr. von Kleiss opined, "Yo's ongoing patterns of behavior bear striking similarities with his known sexually violent offense behaviors and indicate that there is no substantial change in foundation components of his offense patterns."

## CONCLUSION

The record supports the trial court's findings that Yo is a person who (1) "has been convicted of a sexually violent offense"; (2) has been diagnosed with a "mental abnormality or personality disorder"; and (3) "because of [that] mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." Therefore, the trial court did not err in concluding that Yo remains a sexually violent predator.

*Affirmed.*

---

[6] Moreover, after the trial court issued its ruling and began complimenting Yo's trial counsel, Yo embarked on a racist, misogynistic, and expletive-laden rant against the trial court. The trial court remarked that "this is further indication that the court has made the right decision." We agree with the trial court that Yo's behavior toward the trial court additionally evinces Yo's inability to control his anger and potential for violence.